RECEIVED

FEB 14 2018

U.S. District Court
Eastern District of MO

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

)
**ALIREZA BAKHTIARI**                        )
*PLAINTIFF*                                   )
                                             )
V.                                           )        CAUSE NO.:_____
                                             )        **JURY TRIAL DEMANDED**
                                             )
**JAMES P. TOWEY**                           )
*DEFENDANT IN OFFICIAL*                       )
*AND INDIVIDUAL CAPACITIES*                   )
                                             )
**JOHN WAGNER**                              )
*DEFENDANT IN OFFICIAL*                       )
*AND INDIVIDUAL CAPACITIES*                   )
                                             )
**JOHN DOE**                                 )
*DEFENDANT IN OFFICIAL*                       )
*AND INDIVIDUAL CAPACITIES*                   )
                                             )
**CITY OF LADUE**                            )
*DEFENDANT IN CORPORATE*                      )
*AND MUNICIPAL CAPACITIES*                    )
                                             )
*FOR DEFENDANT* **JAMES P. TOWEY**           )
*SERVE AT:*                                   )
**825 MARYVILLE CENTRE DR, NO. 300**         )
**CHESTERFIELD, MO 63017**                   )
                                             )
*FOR ALL OTHER DEFENDANTS*                    )
*SERVE AT:*                                   )
**CITY OF LADUE**                            )
**9345 CLAYTON RD**                          )
**LADUE, MO 63124**                          )

## TABLE OF CONTENTS

NATURE OF THE SUIT .................................................................................................... 3

JURISDICTION AND VENUE ......................................................................................... 4

STATUTE OF LIMITATIONS ........................................................................................... 4

RESPONDENTS ................................................................................................................ 4

EARLY RESOLUTION ..................................................................................................... 5

SOVEREIGN IMMUNITY ............................................................................................... 5

FACTS COMMON TO ALL COUNTS ............................................................................ 5

COUNTS OF CLAIM ...................................................................................................... 19

DAMAGES ....................................................................................................................... 27

VERIFICATION ............................................................................................................... 28

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **ALIREZA BAKHTIARI** | ) | |
| *PLAINTIFF* | ) | |
| | ) | |
| **V.** | ) | **CAUSE NO.:**_____ |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **WAGNER et. al.** | ) | |
| *DEFENDANTS* | ) | |

### COMPLAINT

COMES NOW, Alireza Bakhtiari ("Bakhtiari", "plaintiff"), appearing in ***pro se***, and respectfully states his petition against the above captioned defendants as follows:

### NATURE OF THE SUIT

1. "[T]he Constitution does not guarantee that criminal charges will be filed only against the guilty." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 n.6 (8th Cir. 1993). Moreover, every defendant ultimately acquitted of criminal charges does not have a 1983 cause of action against the accuser(s). *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). Acknowledging and keeping these two legal truths in mind, plaintiff brings this action against the defendants, since their actions and decisions were text book examples of malice, hatred, intense xenophobia and retaliation. The actions and decisions of defendants were the very exceptions to the above two legal truths. The defendants in this suit arrested, imprisoned, tormented and persecuted plaintiff maliciously and vindictively, with utter disregard for the law and for the truth. In the process they took malicious decisions and actions that shake the conscience of any civilized person and society.

2. Defendants' actions, omissions and decision were made **with no good faith and with no probable cause**.

3. Plaintiff prays for relief based on his prosecution, fact of his prosecution, its duration and its manner.

4. Plaintiff brings Missouri tort and constitutional tort claims against the defendants in their various individual, official, municipal and corporate capacities.

## JURISDICTION AND VENUE

5. Plaintiff is a native and citizen of IRAN who lives in the United States in exile. He brings this action pursuant to 28 U.S.C. 1332 (diversity of citizenship). The venue of this action is proper since the actions and omissions complained of occurred within the geographical limits of Eastern District of Missouri.

## STATUTE OF LIMITATIONS

6. For the claims asserted, the statute of limitations is five years. Further, the statue of limitations is tolled for some of the counts according to the continuing conspiracy, continuous tort and/or continuous harm doctrines. The claims are filed within the statutory time limit.

## RESPONDENTS

7. John Wagner ("Wagner) was a sergeant in the police department of the City of Ladue at all relevant times. He is a defendant in his official and individual capacities.

8. John Doe ("Doe") was an officer in the police department of the City of Ladue at all relevant times. Plaintiff respectfully utilizes a place-holder for the defendant's name until he can discover his real name. He is a defendant in his official and individual capacities.

9. James P. Towey ("Towey") was a legal counsel to and the municipal prosecuting attorney for the City of Ladue at all relevant times. He is a defendant in his official and individual capacities.

10. City of Ladue is a defendant in municipal and corporate capacities.

## EARLY RESOLUTION

11. Plaintiff attempted to prevent, and then later on, to resolve the substantive and substantial injuries caused by the defendants in this case. Those attempts failed.

## SOVEREIGN IMMUNITY

12. The City of Ladue and its officials enjoy **no** sovereign immunity in this suit since: the injuries alleged were caused by defendants performing proprietary functions as opposed to their governmental functions; and the municipality has procured liability insurance, thereby waiving sovereign immunity, and the said insurance policy covers the injuries, actions and omissions complained of in this suit.

## FACTS COMMON TO ALL COUNTS

13. Early 2010, plaintiff was in Barnes and Nobles bookstore coffee shop, in Ladue Township browsing the books and meeting with an associate.

14. Plaintiff held a meeting with his associate for about fifteen minutes, then before he left the premises Wagner and Doe approached Plaintiff and began questioning him. Wagner's first utterance was: "what do you want in Ladue? What business you got in here?" Plaintiff thought Wagner's language and tone was somewhat too aggressive. So Plaintiff became nervous and joked: "Sorry officer! What's the problem, do I not look like Ladue material to you?" Wagner became irate and responded: "No you smart ass, you actually *don't!*" Wagner instructed Plaintiff to stay still and not move and he spoke with Doe and few other officers.

15. After a chatter which was less than a minute, Wagner instructed Plaintiff that he was under arrest. Plaintiff inquired: "What have I done? What is the charge officer?" Wagner replied: "I don't know yet, but we will figure something!"

16. An officer hand-cuffed and transported Plaintiff to the headquarters of Ladue police department located in Ladue. Doe escorted plaintiff to an interview room and began questioning him about totally irrelevant things. Plaintiff repeatedly inquired about any probable cause existing for any crime, any infractions whatsoever. But Doe would not answer and continued probing for vague issues. Doe went as far as stepping outside the interview room few times, and searching for plaintiff's name on internet, speaking with Wagner, and then came back inside and continued questioning plaintiff about irrelevant things: such as Plaintiff's services to law enforcement as a cyber forensics expert, or such as Plaintiff's past trainings in the science of law, or in the science of chemistry.

17. Plaintiff pleaded with Doe more than once in the interview room that he suffered from post traumatic stress disorder ("PTSD") and a heart condition and he needed to get home to take some Xanax to help with the severe chest pain, or alternatively plaintiff requested for medical attention there in the department. Doe did not comment on the requests for medical care. The defendants, none, provided any medical care or attention for plaintiff's medical needs.

18. After a long (at least two hours) interview about nothing, Doe escorted plaintiff out of the interview room into an elevator. In the elevator plaintiff asked Doe: "so are you going to ever tell me what I am under arrest for?" Doe responded: "Sarg [sic] is gonna talk to you more when you get downstairs!"

19. Doe and another officer escorted plaintiff to a cage in the lower floors of the building. They locked plaintiff inside the cage. Bars separated the cage from an open area which looked like the booking area. Doe and his fellow officer left and Wagner arrived with a small pocket-sized notebook in one hand and plaintiff's mobile phone in his other hand.

20. Plaintiff pleaded with Wagner more than once at the onset of the conversation that he suffered from PTSD and a heart condition and he needed to get home to take some Xanax to help with the severe chest pain, or alternatively plaintiff requested for medical attention there in the department. Wagner did not comment on the requests for medical care. The defendants, none, provided any medical care or attention for plaintiff's medical needs.

21. Wagner began questioning plaintiff about his past, his migration from Iran to the United States, his prior training in chemistry and in law. Plaintiff told Wagner: "all right, this had gone way too far. First of all I want this conversation conducted in the interview room, just like Officer Doe was conducting it, on camera. I want everything recorded on camera. Second of all, what do you want? What are you guys looking for? What am I suspected of doing?" Wagner responded: "we have googled your name, we know all about you now!" plaintiff retorted: "that seems like some damn good police work, googling someone's name and reading about them on internet! You are the sharpest detective I have met, you ought to go work for FBI, your talents are being wasted here in Ladue!" Wagner became irate again and responded: "ok smart ass! Before you leave Ladue we are gonna teach you a lesson!"

22. Wagner stated: "I found a news article about you, some UM Press Release; it said you sued some university and got 1.5 millions. I bet you are already planning to do the same to us here!" Plaintiff responded: "I guess it must be true if you read it on internet! Do you believe every thing you read on that screen? And if you don't screw up and follow the law no one will get sued! What are you worried about?"

23. Wagner began searching through plaintiff's mobile phone and writing down information, names, phone numbers and emails in his pocket notebook. Plaintiff objected

vehemently: "Put my cell phone away now! You need a warrant to go inside my phone, and as of now, you even don't have a probable cause! Hell, you don't even know why you have arrested me!"

24. Over plaintiff's repeated objections, Wagner went through every single entry on plaintiff's phone. he even went inside the notes, pictures, videos, etc. Wagner repeatedly asked questions about the entries and people's names and plaintiff refused to answer any of the questions.

25. Over plaintiff's repeated objections, Wagner went on to say: "I have googled your name, I have case-netted your name, too. I know about your lawsuits against the university and against the chemical company! I'm not scared of you so you know, I have been sued before. I know official immunity like the back of my hand! Even better than you lawyers!" Plaintiff responded: "First of all, **I'm not a lawyer**, I never finished law school. I am a member of **no bar**. Second of all, you don't even know why you have arrested me, and now you are talking about a lawsuit?" Wagner responded:" we will figure all that out later!"

26. Wagner changed the line of questioning, and he began asking about terrorism, Islam and plaintiff's past in Iran. Plaintiff responded "if I am suspected of terrorism that would be above your pay grade, won't you think? Ladue city cops do not and cannot investigate terrorism! You still owe me a probable cause, you still owe me the reason why you violated my rights by arresting me and going inside my phone!"

27. Wagner went on to ask: "when you were in Iran did they ever send you to help out with Humus?" (he pronounced it hoo-moos) Plaintiff chuckled and responded: "sure, I love humus! It is a very healthy vegetarian dish! But if you want to know about Hamas,

which is a Palestinian militia, I cannot help you there!" Wagner became irate again and stated: "when you leave here you won't have a smart mouth any more!"

28. After another long (at least an hour) interview about nothing, Wagner escorted plaintiff out of the cage into a jail-cell. Plaintiff again asked Wagner: "so are you going to ever tell me what I am under arrest for?" Wagner winked and laughed and responded: "sleep on it tonight, you will figure it out!"

29. Before he locked the cell door, Plaintiff pleaded with Wagner, again, that he suffered from PTSD and a heart condition and he needed to take some Xanax to help with the severe chest pain, or alternatively plaintiff requested for medical attention from the department. Wagner did not comment on the requests for medical care and slammed the door and locked it.

30. Plaintiff tried to sleep in the cell but the chest pain was excruciating. Sometime, after midnight at the early hours of the mooring, a female officer (Jane Doe) spoke to plaintiff through the intercom (audio system, speaker placed on the cell wall). She asked plaintiff: "sir are you ok?!" Plaintiff pleaded with the female officer: "no I'm not ok, chest pain is killing me! I have PTSD, I got a heart condition, I need Xanax, I need something to help with the chest pain!" Jane Doe responded: "next time before you become mouthy with the Sarg [sic] you think of that honey!" Jane Doe did not comment on the requests for medical care. By this time Plaintiff was experiencing nausea, severe chest pain, sweating profusely with pain shooting down his left shoulder and arm. The defendants, none, provided any medical care or attention for plaintiff's medical needs.

31. Next day, late in the mooring, a new officer [John Doe-2] opened the cell door and told plaintiff that he was releasing him. Plaintiff asked Doe-2 for a trip to a hospital, Doe-2 denied the request. Doe-2 provided a few forms to plaintiff, which he called: "discharge

paperwork!" plaintiff signed a few papers. On one of the papers plaintiff made a note of his chest pain and medical conditions but before he finished the note, Doe interrupted him and informed him that (verbatim) "writing shit our on paperwork ain [sic] allowed!"

32. Plaintiff pleaded with Doe-2 again that he suffered from PTSD and a heart condition and he needed to take some Xanax to help with the severe chest pain, or alternatively plaintiff requested for medical attention from the department. Doe-2 did not comment on the requests for medical care. He provided no care and made no such attempt.

33. After the "paperwork" was done, Doe-2 retuned plaintiff's wallet and mobile phone to him. The sum of cash (close to 50 dollars) which plaintiff regularly carried in his wallet was removed. Plaintiff informed Doe-2 of the missing cash. Doe-2 told plaintiff to contact Sergeant Wagner for all those issues. Plaintiff asked: "you have towed my car to the tow yard and have taken my cash. How am I going to go home?!" Doe-2 responded: "take a walk; it's good for your health!"

34. When plaintiff walked out of the booking area and out of the building, another officer (John Doe-3) approached plaintiff and stated: "Sarg [sic] told us to take good care of you. I'll give you a ride home, don't worry!"

35. Plaintiff pleaded with Doe-3 again that he suffered from PTSD and a heart condition and he needed to take some Xanax to help with the severe chest pain, or alternatively plaintiff requested for medical attention from the department. Doe-3 did not comment on the requests for medical care. He provided no care and made no such attempt.

36. Doe-3 placed plaintiff in the back of a police car and drove plaintiff to an abandoned empty lot about a mile away from the police department and then directed plaintiff to step outside of the car. Plaintiff did so. Then Doe-3 told plaintiff that he had to "find his way

home from there!" and then Doe-3 drove off. Plaintiff used his mobile phone to call a taxi and the taxi drove him home.

37. Jon Doe, Doe-1, Doe-2, Doe-3, Jane Doe, and Wagner deliberately ignored clearly visible signs of objectively serious medical needs; those which plaintiff pleaded with them to address. Plaintiff was in their care, control and custody at the time with no ability to help himself. Such actions and omissions shock the conscience of any civilized person and society. They had an actual, specific and calculated intent to harm plaintiff and cause severe physical and psychological injuries.

38. By this time Plaintiff was experiencing nausea, severe chest pain, sweating profusely with pain shooting down his left shoulder and arm. After arriving at his home, plaintiff took few Xanax pills (prescribed by his doctor) and slept. After few hours of sleep he woke up and began taking notes of the preceding events and the content of the conversational exchange with the defendants (as cited verbatim supra) for the sake of up-coming litigations.

39. Few days after being released, plaintiff contacted Ladue Police department and requested a police report of the incident. He was directed to speak with Wagner. Wagner informed plaintiff that "investigation was still under way!" plaintiff asked about the reason for the arrest and imprisonment, what was he at least suspected of. Plaintiff inquired at Wagner: "but you have arrested me already! Investigation comes before the arrest not after!" Wagner only stated: "we are still investigating Sir!" and then hung up the phone.

40. Within the next year after the arrest incident, plaintiff contacted Wagner numerous times, at least once a month and at each phone call, Wagner responded: "we are still investigating Sir!"

41. After months of frustration plaintiff contacted Towey, who was the legal counsel and municipal prosecutor for Ladue municipality. Towey gave the same response: "we are still investigating Sir!" Plaintiff inquired at Towey: "but you have arrested me already! Investigation comes before the arrest not after!" Towey responded: "we are still investigating Sir!"

42. Plaintiff contacted Towey at his own private office, in Law Offices of McCarthy, Leonard & Kaemmerer L.C., three separate times and each time the response was: "we are still investigating Sir!" At the last phone conversation Towey stated that he had spoken to Wagner, the only way to receive a copy of the incident report for plaintiff was to sign a liability release to indemnify the city officials and the city. Plaintiff informed Towey that he would not sign such release.

43. About **a year passed from** the arrest and detention, and plaintiff's efforts to obtain a copy of the incident report were futile. Plaintiff contacted Wagner and Towey with the ultimatum, he informed them that he was filing suit with this Honorable Court for an injunction or a mandamus, for release of the police report and its associated record.

44. The **very next day after** plaintiff's ultimatum, the defendants issued summons for plaintiff under Ladue municipal ordinance codes for "disturbance of peace" and for "harassment". The defendants summoned plaintiff to appear before a municipal court for the proceedings. These charges were nothing but **pretext**, excuses covering up the unlawful arrest, imprisonment and abuse which the defendants had already put Plaintiff through – adding insult to the injury, and then more injuries.

45. Chagrinned and frustrated that Plaintiff would not simply walked away from their affirmative and gross misconducts, the defendants issued two pre-textual charges in order to cover up their misdeeds.

46. Plaintiff appeared at the appointed time for the initial hearing before a municipal Judge, Honorable Keith K. Cheung. Plaintiff asked Judge Cheung for the nature of the charges: "whose peace was ever disturbed? Who was harassed?" Judge Cheung directed plaintiff back to Towey for such inquiries. After the initial hearing plaintiff went behind the court room and met with Towey, and made the inquiry: "whose peace was ever disturbed? Who was harassed?" Towey responded: "we are still investigating Sir!" Plaintiff responded: "Towey do you see how absurd this is? A year is passed, you have not only arrested me, imprisoned me and now you have even charged me! Do I have the right to know why?" Towey responded: "we are still investigating Sir!"

47. Another 10 months passed. Plaintiff appeared before Honorable Judge Cheung at least twice a month. Towey would ask continuances month after month on the account of "we are still investigating!"

48. Plaintiff served Towey's office and the clerk for the city of Ladue with discovery requests. The defendants refused to respond.

49. After another two months of delay in front of Judge Cheung, plaintiff contacted Judge Cheung via a voice mail and an email to Judge Cheung private law firm (plaintiff copied all correspondence to Towey). Plaintiff informed Judge Cheung of the entire story, the vindictiveness, frivolity and malicious nature of the persecution. Judge Cheung's held an emergency hearing. He ordered Towey to release any and all police report and relevant evidence, including the names and addresses of the alleged (fictitious) "victims" of plaintiff's "disturbance" and "harassment". Towey's response to the Judge was "but we are still investigating!" Judge Cheung repeated his order and intentions for Towey's sake.

50. Towey blatantly snubbed Judge Cheung's order. Towey flatly refused to disclose any information about the matter. In the next hearing, Judge Cheung recommended to

plaintiff to certify the case from municipality to the circuit court level in the St. Louis County so he would have higher latitude of discovery.

51. Plaintiff did as such, and on or about April 2nd, 2012, the matter was certified and re-filed before Honorable L. J. Permuter in the Twenty First Judicial Circuit Court, St. Louis County, Missouri[1].

52. At once, plaintiff requested a motion hearing on the issue of discovery before Judge Permuter. Judge Permuter also ordered Towey to release any and all police report and relevant evidence, including the names and addresses of the alleged (fictitious) "victims" of plaintiff's "disturbance" and "harassment". Towey blatantly snubbed Judge Permuter's order.

53. Another six months passed. Plaintiff appeared before Honorable Permuter at least once a month. Towey would ask continuances month after month on account of colorful excuses including "we are still investigating!" In one instance, on or about June 22, 2012, Towey asked for **a four months continuance** to attend to his imaginary "investigation" of the case.

54. In one instance, after one of the hearings in St. Louis county court, Towey approached plaintiff and stated: "I have been talking to John and we have a deal for you!" plaintiff inquired "who is John?" Towey offered, "John Wagner, the sergeant who arrested you. If you sign a liability release and indemnify the city, we will dismiss both disturbance of peace and harassment charges and would release the police report to you." Plaintiff informed Towey that he would never sign such release.

---

[1] In municipal and circuit court, plaintiff was represented in pro se [defendant in pro se in those cases].

55. Plaintiff appeared dutifully for all the hearings, which were countless, before the municipal court and the circuit court. The defendants were ordered to respond to plaintiff's discovery requests twice, by two separate judges [Judge Cheung and Judge Permuter], and they boldly and blatantly refused to comply. This vicious persecution went on until May of 2015.

56. On May 19th 2015, plaintiff contacted Ms. Joan M. Gilmer (Circuit Court Administrator and Chief clerk). Towey had stone-walled for years, without producing discovery, without proceeding to a jury trial, without even naming a single one of his fictitious "victims".

57. Ms. Gilmer, with characteristic and admirable honesty and truth, confronted Towey. Towey had to produce the discovery material, police report, the entire record, and then proceed to a jury trial, *or* he had to dismiss his frivolous charges. At last, Towey faced the truth and chose the latter. Defendants conceded, at last, that the municipal ordinance excuses were nothing but pretext. [See **Exhibit 1**] [See **Exhibit 2**].

58. Even though it was clear from the beginning, from the very moment Wagner and Doe approached Plaintiff outside Barnes and Nobles, they had no reason to believe Plaintiff was involved in any crime, after **five years** of abuse, they conceded that Plaintiff had been actually and factually innocent of any crimes to begin with. Even their pre-textual excuses -- the fabricated "harassment" and "peace disturbance" charges could not stand.

59. Defendants arrested plaintiff in 2010. They tried to cover up their racial animus behind the arrest by fabricating frivolous excuses under the guise of municipal ordinances. At the end, they conceded to the true nature of their masquerade and dismissed the pre-textual charges on July 15th 2015. The span of five years cost plaintiff

substantive and substantial amounts in litigation costs, duress, physical harms, reputation harms and more, to be proven at trial.

60. It took the Ladue defendants in the instant case five years to admit that all their actions and decisions have been nothing but a charade. Five years passed and they boldly even refused to disclose a shred of discovery, even after two orders from two Honorable Judges. Even to this day, they refuse to disclose anything about whether even there was a police report, whether even there was any investigation.

61. For a minor misdemeanor, even for those with any merits, the length of detention is half an hour, not 20 hours with physical torment included.

62. For a minor misdemeanor, even for those with any merits, the length of prosecution is less than a month, not five years, with at least two sales pitches to push indemnification, to settle a civil suit which had not even been filed.

63. Towey's only plan was to drag on, year after year, with hopes that plaintiff would either go away, or sign indemnification and release of liability in exchange for some records, or would plead guilty to the pre-textual charges which Towey kept pending. If plaintiff would have pleaded guilty then there would be no questions of probable cause.

64. In the process of this persecution, Towey was not a prosecutor or a bona fide officer of the court, be it in municipal court or the county circuit court. Towey was clearly concerned with assisting Ladue officers with the cover up, preventing plaintiff from bringing any future suits and mainly, Towey was concerned with dragging frivolous litigations for the purposes of, including others, billing the city of Ladue hourly fees as their legal counsel.

65. As an individual who was merely assisting the Ladue police officers in the cover up, Towey became the complaining witness as opposed to a prosecuting attorney. His actions

throughout were based on economic calculations and monetary motives as opposed to fighting crime. Neither of these activities falls within the sphere of activity for which prosecutors were given absolute immunity. A prosecutor, such as Towey in  this case, who assists, directs or otherwise participates with, the police in cover-up activities prior to an indictment undoubtedly is functioning more in capacities other than in his quasi-judicial capacities.

66. The ordinances which Towey utilized as excuses for cover-up: "peace disturbance" and "harassment", are facially vague, flawed and over-broad in a fashion that they give the persecutors such as City of Ladue, Wagner, Doe and Towey an excuse, an easy cover, to arbitrarily and capriciously arrest, imprison and even persecute those who are not "Ladue material" as Wagner likes to put it.

67. Further, the City of Ladue is liable for plaintiff's injuries since it knowingly facilitated the conducts of its subordinates as alleged, approved them, condoned them, or turned a blind eye for fear of what it might see. Ladue has an affirmative duty to train, supervise, or control the actions of subordinates and it woefully failed in such duties which it owes to all citizens. Even to those citizens who are not "Ladue material" but are unlucky enough just to pass through, like plaintiff in this case.

68. What occurred to plaintiff in this case was not an isolated incident, but one in a long string of similar actions by the City of Ladue and its police subordinates against racial and ethnic minorities. The City of Ladue deliberately turned a blind eye to this pattern of constitutional violations by doing little to no investigation and rarely reviewing reports on its officers' conduct. In doing so Ladue condoned and tacitly authorized a pattern and practice of unlawful detainment and abuse by its Police Department, and had the effect of causing the deprivations of Plaintiff's constitutional rights.

69. There was no suspicion of criminal activity and no legal justification to detain Plaintiff, imprison him and prosecute him for five years. Even after giving ample room and latitude for judgment and discretion to the defendants as law enforcement officers; still from the onset there was not a single scintilla of probable cause, no arguable probable cause, no indicia of probable cause, nothing according to partial or totality of circumstances to justify plaintiff's arrest, imprisonment and prosecution. Even when the truth confronted Towey and two distinct Honorable Judges informed him that he had to reveal probable cause, discovery, or at least something, Towey decided to ask plaintiff for liability release and indemnification instead of admitting the truth.

70. Plaintiff is not demanding a mini-trial prior to his arrest; he is not demanding exhaustion of any and all possible evidence or leads prior to his arrest. It took a full year for the defendants to even conjure up some fictitious excuse for plaintiff's arrest and imprisonment. They offered "harassment" and "disturbance of peace", and even after five years they could not even find any names for their fictitious "victims", not even in answer to two Judges and a court administrator.

71. Throughout this whole persecution, the defendants violated some clearly established statutory and constitutional rights that were owed plaintiff with clear contours. Any reasonable officer, even a rookie would have known these rights. None of the violations alleged in this suit pertain to gray areas; the defendants crossed some clearly established lines in their actions, decisions and omissions.

72. Through out this whole persecution, the actions, decisions and omissions of the defendants served no valid purpose and it had nothing to do with their public duties, serving, protecting or their positions as officers of peace.

73. It would be absurd and preposterous to think anything **other than** persecution, racial animus, selective arrest, selective prosecution, malice, intense xenophobia, retaliation and cover-up had been the underlying force for what defendants did to plaintiff in this case.

74. All said and done, plaintiff has suffered: bodily harm which is medically significant, psychological injury, severe emotional distress, medical expenses, lost wages, litigation costs, humiliation, and other losses to be proven at trial. Plaintiff sought and received medical treatment for his emotional distress; he was traumatized and re-traumatized as a PTSD patient.

## COUNTS OF CLAIM

### COUNT (1)
### ABUSE OF PROCESS - MISSOURI LAW
### DEFENDANTS: CITY OF LADUE, DOE, TOWEY, WAGNER

75. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

76. Defendants employed regularly issued legal process to compel performance and forbearance their unlawful acts;

77. Defendants did so with intent to do harm plaintiff without excuse or justification;

78. Defendants did so in order to obtain a collateral objective that is outside the legitimate ends of the legal process;

79. The abuse of process was not otherwise privileged, it was done with no good faith, no probable cause and had no legal justification;

80. As a result plaintiff has been substantively and substantially harmed.

### COUNT (2)
### MALICIOUS PROSECUTION - MISSOURI LAW
### DEFENDANTS: CITY OF LADUE, DOE, TOWEY, WAGNER

81. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

82. Defendants employed regularly issued legal process to compel performance and forbearance their unlawful acts;

83. Defendants did so with intent to do harm plaintiff without excuse or justification;

84. Defendants did so in order to obtain a collateral objective that is outside the legitimate ends of the legal process;

85. The prosecution was not otherwise privileged, it was done with no good faith, no probable cause and had no legal justification;

86. The prosecution eventualized in a dismissal in plaintiff's favor;

87. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for this prosecution;

88. As a result plaintiff has been substantively and substantially harmed.

## COUNT (3)
## CIVIL CONSPIRACY – MISSOURI LAW
### DEFENDANTS: TOWEY, WAGNER

89. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

90. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies;

91. Defendants acted with a common purpose, in meetings of minds, to do the unlawful acts with the unlawful purposes;

92. Defendants committed overt acts of the unlawful purposes;

93. As a result plaintiff has been substantively and substantially harmed.

## COUNT (4)
### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT – EQUAL PROTECTION
### DEFENDANTS: CITY OF LADUE, DOE, TOWEY, WAGNER

94. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

95. Plaintiff is a member of a protected and excluded group, cognizable by law;

96. The distinction and under-representation of plaintiff's ethnic, racial and national group is substantial;

97. Were plaintiff not a member of the protected group, then defendants would not have deprived him of his rights as enumerated supra.

98. Compared to those similarly situated, plaintiff was treated selectively and disparately;

99. As a result plaintiff has been substantively and substantially harmed.

## COUNT (5)
### 42 U.S.C. § 1983 – FIRST AMENDMENT – RETALIATION
### DEFENDANTS: DOE, TOWEY, WAGNER

100. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

101. Free Speech is a right not a crime, neither is access to courts. Demanding Wagner and Doe to proffer a charge prior to arresting plaintiff was a right. Informing Wagner that he could not enter the mobile phone without a warrant was a right. Turning down Towey's and Wagner's offers for signing an indemnification in exchange for his dismissal of his fictitious pre-textual charges was also a right. All these rights, assertions and speeches, were and are protected by the First Amendment. The retaliatory and vindictive imprisonment and prosecution were in violation of his First Amendment right of access to the courts. Towey, Doe and Wagner, imprisoned him and brought frivolous charges against plaintiff in retaliation for the anticipated exercise of his First Amendment right to bring a civil rights lawsuit against them.

104. Defendants' adverse actions, omissions and decisions against the plaintiff had a substantial causal connection with plaintiff's protected speech;

105. As a result plaintiff has been substantively and substantially harmed.

### COUNT (6)
### 42 U.S.C. § 1983 – CONSPIRACY
### DEPRAVATION OF CONSTITUTIONAL RIGHTS
### DEFENDANTS: DOE, TOWEY, WAGNER

106. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

107. It is clear from the onset that Towey and Wagner conspired together to cover up the incidents of unlawful arrest and unlawful detention and the other constitutional violations which occurred throughout;

108. There was an agreement between these two state actors to act in concert to inflict the unconstitutional injuries which they brought upon plaintiff and in the process they commit overt acts in furtherance of that goal, and causing the harms.

109. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies;

110. Defendants acted with a common purpose, in meetings of minds, to do the unlawful acts with the unlawful purposes;

111. Defendants committed overt acts of the unlawful purposes;

112. As a result plaintiff has been substantively and substantially harmed.

### COUNT (7)
### 42 U.S.C. § 1985(2) - CONSPIRACY
### DEPRAVATION OF CONSTITUTIONAL RIGHTS
### DEFENDANTS: DOE, TOWEY, WAGNER

113. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

114. Defendants conspired for the purpose of depriving, either directly or indirectly, plaintiff of equal protection of the laws, or of equal privileges and immunities under the laws. They made affirmative actions and omissions in furtherance of the conspiracy, whereby plaintiff is injured in his person, property and is deprived of his rights.

115. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies;

116. Defendants acted with a common purpose, in meetings of minds, to do the unlawful acts with the unlawful purposes;

117. Defendants committed overt acts of the unlawful purposes;

118. As a result plaintiff has been substantively and substantially harmed.

### COUNT (8)
### 42 U.S.C. § 1985(3) - CONSPIRACY
### DEPRAVATION OF CONSTITUTIONAL RIGHTS
### DEFENDANTS: DOE, TOWEY, WAGNER

119. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

120. Defendants conspired for the purpose of depriving, either directly or indirectly, plaintiff of equal protection of the laws, or of equal privileges and immunities under the laws. They made affirmative actions and omissions in furtherance of the conspiracy, whereby plaintiff is injured in his person, property and is deprived of his rights.

121. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies;

122. Defendants acted with a common purpose, in meetings of minds, to do the unlawful acts with the unlawful purposes;

123. Defendants committed overt acts of the unlawful purposes;

124. As a result plaintiff has been substantively and substantially harmed.

### COUNT (9)
### 42 U.S.C. § 1986 - CONSPIRACY
### DEPRAVATION OF CONSTITUTIONAL RIGHTS
### DEFENDANTS: DOE, TOWEY, WAGNER

125. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

126. Defendants had clear knowledge of the conspiracies alleged in the above two counts [1985(2) and 1985(3)], and that any of the wrongs alleged were about to be committed.

127. Defendants had the power to prevent the conspiracy but they deliberately chose to do nothing.

128. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for these conspiracies;

129. As a result plaintiff has been substantively and substantially harmed.

### COUNT (10)
### 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT
### PROCEDURAL DUE PROCESS - ARBITRARY AND CAPRICIOUS
### ENFORCEMENT OF VAGUE ORDINANCES
### DEFENDANTS: CITY OF LADUE, DOE, TOWEY, WAGNER

130. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

131. Plaintiff possessed constitutionally protected interests protecting him from arbitrary and capricious enforcement of vague ordinances;

132. At the time these rights were clearly established with clear precedents;

133. Any reasonable official would have known these clearly established rights and contours of such rights;

134. Defendants deprived plaintiff of such rights as a result of their actions under the color of law;

135. They afforded plaintiff no process prior to, or after, deprivation of his rights;

136. As a result plaintiff has been substantively and substantially harmed.

### COUNT (11)
### 42 U.S.C. § 1983 – MUNICIPAL LIABILITY – *MONELL* CLAIM
### CUSTOM OF ABUSE
### DEFENDANT: CITY OF LADUE

137. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

138. The City of Ladue had a continuing, widespread, persistent and pervasive pattern of unconstitutional misconduct by its police staff. It blatantly and brazenly just ignored police misconduct and failed to investigate previous incidents similar to the incident in question herein;

139. The City of Ladue was deliberately indifferent to and tacitly authorized such conduct by its police staff, even after it was on notice of such misconducts;

140. The City of Ladue injured Plaintiff by such actions and omissions pursuant to the aforementioned custom, and such custom was the moving force behind the constitutional violations and depravations alleged herein;

141. As a result plaintiff has been substantively and substantially harmed.

### COUNT (12)
### 42 U.S.C. § 1983 – MUNICIPAL LIABILITY – *MONELL* CLAIM
### FAILURE TO TRAIN
### DEFENDANT: CITY OF LADUE

142. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

143. The City of Ladue had a continuing, widespread, persistent and pervasive pattern of unconstitutional misconduct by its police staff. But, being on notice, it blatantly and brazenly just ignored to implement initial training, continued training and effective performance reviews;

144. The City of Ladue injured Plaintiff by such actions and omissions pursuant to the aforementioned failure to train, and such failure was the moving force behind the constitutional violations and depravations alleged herein;

145. As a result plaintiff has been substantively and substantially harmed.

**COUNT (13)**
**42 U.S.C. § 1983 – MUNICIPAL LIABILITY – _MONELL_ CLAIM**
**FAILURE TO SUPERVISE**
**DEFENDANT: CITY OF LADUE**

146. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

147. The City of Ladue had a continuing, widespread, persistent and pervasive pattern of unconstitutional misconduct by its police staff. But, being on notice, it blatantly and brazenly just ignored to be present, supervise, control and discipline;

148. The City of Ladue injured Plaintiff by such actions and omissions pursuant to the aforementioned failure to supervise, and such failure was the moving force behind the constitutional violations and depravations alleged herein;

149. As a result plaintiff has been substantively and substantially harmed.

**COUNT (14)**
**42 U.S.C. § 1983 – FOURTH AMENDMENT – MALICIOUS PROSECUTION**
**DEFENDANTS: CITY OF LADUE, DOE, TOWEY, WAGNER**

150. Plaintiff reincorporates herein the facts common to all counts, as alleged supra in paragraphs 1 to 74;

151. Defendants employed regularly issued legal process to compel performance and forbearance their unlawful acts;

152. Defendants did so with intent to do harm plaintiff without excuse or justification;

153. Defendants did so in order to obtain a collateral objective that is outside the legitimate ends of the legal process;

154. The prosecution was not otherwise privileged, it was done with no good faith, no probable cause and had no legal justification;

155. The prosecution eventualized in a dismissal in plaintiff's favor;

156. Discrimination (basis of ethnicity, nationality and race), malice, intense xenophobia, retaliation and intimidation were the underlying forces for this prosecution;

157. As a result plaintiff has been substantively and substantially harmed.

## DAMAGES

### JURY TRIAL REQUESTED
### DEFENDANTS: CITY OF LADUE, TOWEY, JOHN DOE, WAGNER

158. Plaintiffs request assessment of actual and punitive damages against Defendant **TOWEY:**

> Actual Damages: 100,000.00 (USD $)
>
> Punitive Damages: 550,000.00 (USD $)
>
> Costs of Suit: 50,000.00 (USD $)

159. Plaintiffs request assessment of actual and punitive damages against Defendant **JOHN DOE:**

> Actual Damages: 100,000.00 (USD $)
>
> Punitive Damages: 550,000.00 (USD $)
>
> Costs of Suit: 50,000.00 (USD $)

160. Plaintiffs request assessment of actual and punitive damages against Defendant **WAGNER:**

> Actual Damages: 100,000.00 (USD $)
>
> Punitive Damages: 550,000.00 (USD $)
>
> Costs of Suit:  50,000.00 (USD $)

161. Plaintiffs request assessment of actual and punitive damages against Defendant **CITY OF LADUE:**

> Actual Damages: 200,000.00 (USD $)
>
> Punitive Damages: 1,100,000.00 (USD $)
>
> Costs of Suit:  100,000.00 (USD $)

162. Plaintiffs pray for assessment of a **TOTAL OF 3,500,000 (USD $)** against all the defendants.

163. In addition, plaintiffs pray for any and all other relief deemed just and proper under the circumstances.

## VERIFICATION

164. I, the undersigned, plaintiff in pro se, certify and verify that all the factual assertions in the foregoing are true and accurate to the best of my memory, knowledge and belief.

Respectfully Submitted
On this **Feb 14th 2018**

**ALIREZA BAKHTIARI**
**775 SEVEN HILLS LANE,**
**SAINT CHARLES, MISSOURI 63304**
**TELLEPHONE: +1-636-229-2202**
**EMAIL: ALI.BAKTIAR090@GMAIL.COM**

*APPEARING IN PRO SE*